# EXHIBIT A

**SMITH, SMITH & CURLEY, P.C.**
**149 Avenue At The Common**
**Shrewsbury, New Jersey 07702**
**(732) 935-7246**
**Attorneys for Plaintiff**

-----------------------------------------------------X

**BRIAN CARSON**

      **Plaintiff,**

v.

**CAREONE, LLC, KING JAMES CARE**
**CENTER OF MIDDLETOWN, LLC**
**a/k/a CAREONE AT KING JAMES,**
**KING JAMES ACQUISITION**
**COMPANY, LLC, MICHAEL GENTILE**
**AND ABC COMPANIES (1-10)**

      **Defendants.**

-----------------------------------------------------X

received
3 29 10

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION: MONMOUTH COUNTY**
**DOCKET NO.:  MON-L-958-10**

**Civil Action**

**SUMMONS**

**THE STATE OF NEW JERSEY TO:**

      **KING JAMES ACQUISITION COMPANY, LLC**
      **c/o Kevin Breslin**
      **173 Bridge Plaza North**
      **Fort Lee, NJ 07024**

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within **35** days from the date you received this Summons, not counting the date you received it. If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625.  A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiffs' attorney whose name and address appear above, or to plaintiffs, if no attorney is named.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiffs demand, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: March 23, 2010

_/s/ Jennifer M. Perez_
**JENNIFER M. PEREZ,**
**Acting Clerk of the Superior Court**

Name of Defendants to be served:      **KING JAMES ACQUISITION COMPANY, LLC**

Address for Service:                           **c/o Kevin Breslin**
**173 Bridge Plaza North**
**Fort Lee, NJ 07024**

*$135.00 FOR CHANCERY DIVISION OR FOR LAW DIVISION CASES

-2-

**SMITH, SMITH & CURLEY, P.C.**
149 Avenue At The Common
Shrewsbury, New Jersey 07702
(732) 935-7246
Attorneys for Plaintiff

-----------------------------------------------X

|  |  |
|---|---|
| BRIAN CARSON | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION: MONMOUTH COUNTY**<br>**DOCKET NO.:  MON-L-958-10** |
| Plaintiff, | |
| v. | **Civil Action** |
| CAREONE, LLC, KING JAMES CARE<br>CENTER OF MIDDLETOWN, LLC<br>a/k/a CAREONE AT KING JAMES,<br>KING JAMES ACQUISITION<br>COMPANY, LLC, MICHAEL GENTILE<br>AND ABC COMPANIES (1-10) | **SUMMONS** |
| Defendants. | |

-----------------------------------------------X

**THE STATE OF NEW JERSEY TO:**

**CAREONE, LLC**
c/o Kevin Breslin
173 Bridge Plaza North
Fort Lee, NJ 07024

        The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The Complaint attached to this Summons states the basis for this lawsuit.  If you dispute this Complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within **35** days from the date you received this Summons, not counting the date you received it.  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625.  A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiffs' attorney whose name and address appear above, or to plaintiffs, if no attorney is named.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiffs demand, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: March 23, 2010

/s/ Jennifer M. Perez
**JENNIFER M. PEREZ,**
**Acting Clerk of the Superior Court**

Name of Defendants to be served:   **CareOne, LLC**

Address for Service:   **c/o Kevin Breslin**
**173 Bridge Plaza North**
**Fort Lee, NJ 07024**

$135.00 FOR CHANCERY DIVISION OR FOR LAW DIVISION CASES

-2-

**SMITH, SMITH & CURLEY, P.C.**
**149 Avenue At The Common**
**Shrewsbury, New Jersey 07702**
**(732) 935-7246**
**Attorneys for Plaintiff**
-------------------------------------------------X

|  |  |
|---|---|
| **BRIAN CARSON** | **SUPERIOR COURT OF NEW JERSEY** |
| | **LAW DIVISION: MONMOUTH COUNTY** |
| **Plaintiff,** | **DOCKET NO.: MON-L-958-10** |
| | |
| **v.** | **Civil Action** |
| | |
| **CAREONE, LLC, KING JAMES CARE** | |
| **CENTER OF MIDDLETOWN, LLC** | |
| **a/k/a CAREONE AT KING JAMES,** | **SUMMONS** |
| **KING JAMES ACQUISITION** | |
| **COMPANY, LLC, MICHAEL GENTILE** | |
| **AND ABC COMPANIES (1-10)** | |
| | |
| **Defendants.** | |

-------------------------------------------------X

**THE STATE OF NEW JERSEY TO:**

**KING JAMES CARE CENTER OF MIDDLETOWN, LLC**
**a/k/a CAREONE AT KING JAMES**
**c/o Kevin Breslin**
**173 Bridge Plaza North**
**Fort Lee, NJ 07024**

        The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within **35** days from the date you received this Summons, not counting the date you received it. If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiffs' attorney whose name and address appear above, or to plaintiffs, if no attorney is named. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiffs demand, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: March 23, 2010

/s/ Jennifer M. Perez
**JENNIFER M. PEREZ,**
**Acting Clerk of the Superior Court**

Name of Defendants to be served:  **KING JAMES CARE CENTER OF**
**MIDDLETOWN, LLC a/k/a CAREONE**
**AT KING JAMES**

Address for Service:  **c/o Kevin Breslin**
**173 Bridge Plaza North**
**Fort Lee, NJ 07024**

\*$135.00 FOR CHANCERY DIVISION OR FOR LAW DIVISION CASES

-2-

**SMITH, SMITH & CURLEY, P.C.**
149 Avenue At The Common
Shrewsbury, New Jersey 07702
(732) 935-7246
**Attorneys for Plaintiff**

FEB 19 2010

----------------------------------------------X
                      :

**BRIAN CARSON**              :

        **Plaintiff,**      :

                      :

**v.**                      :

                      :

**CAREONE, KING JAMES CARE**  :
**CENTER OF MIDDLETOWN, LLC a/k/a**  :
**CAREONE AT KING JAMES, MICHAEL**  :
**GENTILE AND ABC COMPANIES (1-10)**  :

       **Defendants.**      :
----------------------------------------------X

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION: MONMOUTH COUNTY**

**DOCKET NO.:** *958-10*

**Civil Action**

**COMPLAINT**

    Plaintiff Brian Carson (hereafter "Plaintiff") residing at 3 Berry Street, Keansburg, New Jersey 07734, by way of Complaint against CareOne, King James Care Center of Middletown, LLC a/k/a CareOne at King James, Michael Gentile and ABC Companies (1-10) (collectively herein referred to as "Defendants") says:

### FACTS COMMON TO ALL COUNTS

    1.    Defendant CareOne is a family-owned and operated health care continuum providing post-acute rehabilitation, long term and assisted living care, respite care, and memory care throughout New Jersey ("CareOne").

    2.    Defendant King James Care Center of Middletown, LLC a/k/a CareOne At King James is one of CareOne's locations with a business address of 1040 Route 36, Atlantic Highlands, NJ 07716 ("King James").

1

3.    Defendant ABC Companies (1-10) are fictitious sole proprietorships, companies, limited liability companies, corporations, partnerships, and/or other companies/entities who are unknown to Plaintiff at this time but who may be identified during discovery in this matter, which persons and/or companies are related, affiliated and/or successors to CareOne and liable to Plaintiff as Plaintiff's employer for the reasons set forth herein.

4.    Defendant Michael Gentile was employed by CareOne as the Administrator at the King James location at all times relevant in this matter.  Upon information and belief, Defendant Gentile resides in New Jersey.

5.    Plaintiff began his employment with CareOne and King James at the King James location in or about December, 2006 in the position of maintenance assistant.

6.    In or about August, 2007, Plaintiff was promoted to the position of Maintenance Director.  In his new position, Plaintiff was the supervisor of approximately fifteen (15) employees.

7.    Plaintiff performed very well in the position of Maintenance Director.  In fact, Plaintiff was recognized by CareOne as the "Employee of the Month" on two separate occasions in 2007.

8.    In or about January, 2008, Plaintiff was given an additional title of Environmental Services Director.  Despite the new title, Plaintiff continued as the Maintenance Director and remained the supervisor of approximately fifteen (15) employees.

9.    In or about August, 2008, Plaintiff sustained a broken leg.  As a result of the

2

injury, Plaintiff requested a leave of absence from work to obtain medical treatment and to recover from his injury.

10.   However, approximately two (2) weeks into his medical leave, Defendant Gentile telephoned Plaintiff and demanded that he immediately return to work.  Plaintiff responded that he was unable to return to work because of his broken leg and the doctor had yet to clear him to return to work.  Defendant Gentile responded that he did not care and if Plaintiff wanted his job, he must immediately return to work.

11.   As a result of Defendant Gentile's threat of termination, Plaintiff was forced to return to work prior to making a full recovery and receiving medical clearance from his doctor to return to work.

12.   After returning to work, Defendant Gentile denied Plaintiff's requests for intermittent leave so he could attend his doctor appointments and physical therapy sessions for his broken leg during work hours.  Defendant Gentile advised Plaintiff that he needed to schedule his doctor appointments and physical therapy sessions outside his regular work hours.  In response to Plaintiff advising Defendant Gentile that all his doctor appointments and physical therapy sessions could not be scheduled outside his regular work hours, Defendant Gentile stated, "That's your problem."

13.   As a result of Defendants' denial of Plaintiff's requests for medical leave necessary to make a full recovery from his broken leg, Plaintiff developed a blood clot in his broken leg in or about October, 2008.

14.   As a result of developing a blood clot, Plaintiff applied for FMLA leave on or about October 17, 2008.

3

15.    After learning that Plaintiff applied for FMLA leave as a result of the blood clot, Defendant Gentile reprimanded Plaintiff by stating, "How dare you do this, after all I have done for you?"   Defendant Gentile further told Plaintiff, that he had "lost all respect" for Plaintiff and "trust" in Plaintiff.

16.    In or about January, 2008, Plaintiff returned to work from his FMLA leave.

17.    Upon his return to work, Defendant Gentile advised Plaintiff that, as a result of him taking FMLA leave, Plaintiff was no longer the Maintenance Director and was stripped of all supervisory responsibilities.  Plaintiff also learned that Defendants hired Mr. John Chiapetta and placed him in Plaintiff's position of Maintenance Director during Plaintiff's FMLA leave and that Plaintiff now had to directly report to Mr. Chiapetta.

18.    Plaintiff complained and objected to Defendants for demoting Plaintiff and retaliating against him for taking FMLA leave.   In response to Plaintiff's complaints, Defendant Gentile advised Plaintiff that, "I can do whatever I want."  Defendant Gentile also warned Plaintiff that he was "going to see to it that you fail."

19.    Plaintiff complained to the human resource manager at King James, Eric Russell, concerning Defendant Gentile's harassment and Defendants' decision to demote Plaintiff in retaliation for taking FMLA leave.   In response to Plaintiff's complaints, Mr. Russell informed Plaintiff that, "I am not getting involved."

20.    As a result, Plaintiff then complained to a regional HR representative concerning Defendant Gentile's harassment and Defendants' decision to demote Plaintiff in retaliation for taking FMLA leave. The assigned HR representative responded that she would "look into it" and would "get back" to him.  Plaintiff, however, never received any

further communication from this HR representative in response to his complaints.

21.    Additionally, true to his word, Defendant Gentile made every effort to see to it that Plaintiff fail.

22.    Additionally, Defendant Gentile constantly mocked Plaintiff as a result of his disability and routinely cursed at Plaintiff, by yelling "move f***ing faster" and "stop f***ing procrastinating." Gentile began assigning Plaintiff tedious, unnecessary and unduly burdensome job assignments. For instance, Defendant Gentile began requiring that Plaintiff fill out a Maintenance Room Check List that Defendant Gentile specifically created for Plaintiff to fill out for every room that he was required to check and make ready.

23.    In or about June, 2009, Plaintiff slipped on the wet floor at work and suffered an injury to his knee. As a result of his injury, Plaintiff's doctor recommended that Plaintiff be placed on light duty, including no climbing, lifting, pushing or pulling of anything over 20 pounds.

24.    As a result of his injury and doctor's orders, Plaintiff requested that Defendants provide him light duty job assignments and that any duties Plaintiff was unable to perform as a result of his disability be reassigned to another employee.

25.    Plaintiff's request for the aforesaid reasonable accommodations was denied by Defendants.

26.    Around the time Plaintiff suffered his knee injury, Plaintiff's supervisor, John Chiapetta, instructed Plaintiff to stop filling out the Maintenance Room Check List so that he had more time to complete other job duties that Mr. Chiapetta advised were "more important." Despite Mr. Chiapetta's instruction, Plaintiff received a written warning on

5

August 4, 2009 from Defendant Gentile for failing to timely complete the Maintenance Room Check Lists.

27.     Despite his disabilities, medical leave and constant harassment and retaliation directed at him from Defendant Gentile for same, Plaintiff's job performance was always "good" to "outstanding."

28.     In fact, in the fall, 2009, Plaintiff was told that he would receive a raise.  In an email to Plaintiff dated October 2, 2009, Defendant Gentile wrote:

> Brian, based upon my records, your annual review and 2% increase is over due.  Further review of same supports the need to adjust your increase effective date to May 09 due to your leave of absence from work from 10/19/08 to 1/05/09.  As such, your increase will be effective and retroactive to May 09. I will prepare your annual review with John and present it to you sometime next week.  Please see me if you have any questions.

29.     Thereafter, Plaintiff was provided a performance appraisal which rated Plaintiff's work performance as "good" or "outstanding" in all categories.

30.     Despite Plaintiff's "good" to "outstanding" work performance, Defendant Gentile continued to harass and retaliate against Plaintiff as a result of his disability, medical leaves, requests for reasonable accommodations and complaints of Defendant Gentile relating to same.

31.     Plaintiff continued to complain to Defendant about Gentile's conduct. Despite Plaintiff's complaints, no one from CareOne did anything to assist Plaintiff, investigate Plaintiff's complaints or stop Defendant Gentile's harassment and retaliation of Plaintiff.

32.     On November 9, 2009, Plaintiff was reprimanded by his supervisor John

6

Chiapetta for refusing to lie to the Director of Nursing by telling them that Mr. Chiapetta was present at work, when in fact, he had not yet arrived at work.  As a result of the incident, Plaintiff was suspended for one day by Defendants.

33.   Later that day, Plaintiff telephoned CareOne's HR Department and complained to Ms. Karen Ashmore about Defendant Gentile's continued harassment and retaliation and to further inquire as to the reasons why he was being suspended.  During the telephone call, Plaintiff also requested that Ms. Ashmore investigate and stop the ongoing harassment and retaliation directed at him by Defendant Gentile.  Ms. Ashmore responded that she would look into it and call him back.

34.   Approximately one hour after complaining to Ms. Ashmore, Defendant Gentile telephoned Plaintiff and advised him that he was now being suspended for an additional day for complaining to HR.  Defendant Gentile further advised Plaintiff that he was also being required to attend a meeting with Defendant Gentile at 3:00 p.m. the following day.

35.   After speaking with Defendant Gentile and being suspended an additional day in retaliation for his complaints, Plaintiff telephoned Ms. Ashmore to complain about the additional suspension of one day and to repeat his complaints concerning Defendant Gentile's harassment and retaliation.  In response, Ms. Ashmore advised Plaintiff that there was nothing she could do to assist him.  As a result, Plaintiff requested that Ms. Ashmore provide him a name of someone who could assist him.  Ms. Ashmore responded that Plaintiff could try bringing his complaints to Mr. Kenneth Keegen.

36.   Prior to his meeting with Defendant Gentile, Plaintiff wrote a letter to Mr. Keegen repeating his complaints concerning Defendant Gentile's continued harassment

7

and retaliation of Plaintiff as a result of his disability, medical leave and requests for accommodations. In this letter, Plaintiff wrote:

> The reason I am writing to you is to inform you of the ongoing harassment and retaliation directed toward me and to request your assistance to make it stop. I have made previous complaints to my supervisors, local human resource representative and regional human resource representative. Despite my complaints, nothing has been done and the harassment and retaliation continues to escalate.
>
> I have been harassed and retaliated against since I was forced to take a medical leave as a result of a broken leg sustained in August, 2008....

37.    Plaintiff's letter further reads:

> The ongoing harassment/retaliation has caused me to sustain severe chest pains, stress and anxiety. I have been prescribed xanax and ambien by my doctor. The stress and anxiety I am under at work has caused tremendous hardship at home with my wife and with my children. My performance evaluations show that I am an outstanding employee of Care One. I only request the assistance that I am entitled to under the law and for the harassment/retaliation to stop. I recommend that Mr. Gentile undergo sensitivity training and for him to be informed and understand his obligations under the law.

38.    At the meeting, Plaintiff was told by Defendant Gentile that he was aware that Plaintiff wrote a letter to CareOne's corporate office, and as a result, he was now suspended indefinitely.

39.    The next day, Plaintiff received a phone call from Defendant Gentile advising him that he was terminated.

40.    No one from CareOne contacted Plaintiff to discuss his complaints and/or allegations in his letter. Instead, Defendant terminated Plaintiff.

41.    In a letter dated November 12, 2009, Defendant Gentile wrote to Plaintiff

concerning Defendants' reason for his termination as follows:

> We have now completed a full review of your overall job performance. This letter is to inform you that based on our review, your employment with CareOne at King James has been terminated due to continued unsatisfactory job performance.

42.    As a result of Defendants' conduct, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

## FIRST COUNT

## NEW JERSEY LAW AGAINST DISCRIMINATION - DISABILITY DISCRIMINATION

### N.J.S.A. 10:5-1 et seq. ("NJLAD")

43.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

44.    During his employment, Plaintiff suffered from a broken leg, a blood cot (which formed in the broken leg), and a sprained knee.    The aforesaid conditions constitute disabilities and/or handicaps under the NJLAD.

45.    Defendants took adverse employment actions against Plaintiff, including, harassing Plaintiff, demoting Plaintiff, denying Plaintiff's requests for reasonable accommodations, and terminating Plaintiff's employment, as a result of Plaintiff's disabilities.

46.    The aforesaid adverse employment actions taken by Defendants because of Plaintiff's disabilities are a violation of the NJLAD.

47.    Defendant Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJLAD violations.

9

48.    As a result of Defendants' conduct, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff, demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.    Back pay and benefits;

b.    Front pay and benefits;

c.    Compensatory damages;

d.    Consequential damages;

e.    Punitive damages;

f.    Pre-judgment interest and enhancements to off-set negative tax consequences;

g.    Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); and

h.    Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

## SECOND COUNT

### NJLAD - RETALIATION

49.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

50.    As set forth above, Defendants' conduct and/or treatment of Plaintiff, including the termination of his employment, were in retaliation for the protests and complaints Plaintiff made concerning disability discrimination, retaliation, failure to

10

reasonably accommodate his disabilities, the hostile work environment and other illegal and discriminatory conduct directed toward him by Defendants.

51.    Defendant Michael Gentile condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the retaliatory conduct and actions taken against Plaintiff.

52.    Said actions violate the NJLAD.

53.    By reason of the actions complained of above, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.    Back pay and benefits;

b.    Front pay and benefits;

c.    Compensatory damages;

d.    Consequential damages;

e.    Punitive damages;

f.    Pre-judgment interest and enhancements to off-set negative tax consequences;

g.    Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); and

h.    Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

11

## THIRD COUNT

## NJLAD - FAILURE TO REASONABLY ACCOMMODATE

54.　Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

55.　At times during his employment, Plaintiff required and requested light duty and several medical leaves of absence from work as a result of his disabilities/handicaps.

56.　Defendants were legally required to reasonably accommodate Plaintiff's handicaps/disabilities, but failed to do so.

57.　Defendants were also legally required to engage with Plaintiff in an interactive process to determine what reasonable accommodations could be provided to Plaintiff.

58.　Plaintiff performed his job duties in a "good" or "outstanding" manner.

59.　With a reasonable accommodation, such as permitting Plaintiff to take the requested leaves of absence or providing Plaintiff light duty tasks/responsibilities, Plaintiff would have been able to return and/or continue to work and perform the essential functions of his job.

60.　Defendants' failure to reasonably accommodate Plaintiff caused Plaintiff to suffer physical injuries and adverse job consequences in the form of a demotion which resulted in the loss of his job status and supervisory responsibilities and, eventually, the termination of his employment with Defendants.

61.　The Defendants' failure to reasonably accommodate Plaintiff constitutes a violation of the NJLAD.

12

62.   Defendant Michael Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJLAD violations.

63.   By reason of the actions complained of above, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.   Back pay and benefits;

b.   Front pay and benefits;

c.   Compensatory damages;

d.   Consequential damages;

e.   Punitive damages;

f.   Pre-judgment interest and enhancements to off-set negative tax consequences;

g.   Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); and

h.   Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

## FOURTH COUNT

### NJLAD – HOSTILE WORK ENVIRONMENT

64.   Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

13

65.     Defendants' acts as set forth herein constitute a severe and pervasive hostile work environment based upon disability in violation of the NJLAD.

66.     Defendant Michael Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJLAD violations.

67.     As a result of the hostile work environment, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.      Back pay and benefits;

b.      Front pay and benefits;

c.      Compensatory damages;

d.      Consequential damages;

e.      Punitive damages;

f.      Pre-judgment interest and enhancements to off-set negative tax consequences;

g.      Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); and

h.      Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

14

<u>FIFTH COUNT</u>

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2601, et seq.

68.    Plaintiff repeats and realleges each of the prior allegations of the within complaint as if set forth at length herein.

69.    As a result of Plaintiff's serious medical conditions, including his broken leg and blood clot formed in his broken leg, Defendants were required to advise Plaintiff of his medical leave rights and to permit Plaintiff to take medical leave in accordance with the Family and Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA").

70.    At all relevant times, CareOne was an employer within the meaning of the FMLA

71.    At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA.

72.    Plaintiff did not understand his rights under the FMLA.

73.    By their actions, Defendants unlawfully interfered with, restrained, retaliated against and denied the exercise of and/or Plaintiff's ability to exercise rights provided by the FMLA.  Plaintiff has been prejudiced by Defendants' FMLA violations.

74.    Defendant Michael Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the FMLA violations.

75.    The aforesaid conduct by Defendants was, and is, a willful violation of the FMLA.

76.    As a direct and proximate result of Defendants' willful violation of the FMLA, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid FMLA violations as follows:

A.    Compensatory damages equal to all wages, salary, employment benefits, and other compensation denied or lost by Plaintiff, pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(I);

B.    Pre-judgment interest pursuant to 29 U.S.C. §2617(a)(1)(A)(ii);

C.    Liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

D.    Attorneys fees, expert witness fees and costs pursuant to 29 U.S.C. §2617(a)(3);

E.    Post-judgment interest and enhancements to off-set negative tax consequences; and

F.    Such further relief as the Court deems equitable and just.

## SIXTH COUNT

## BREACH OF CONTRACT

77.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

78.    On or about October 2, 2009, Plaintiff was promised by Defendants that he would receive a 2% increase in his salary, retroactive from May, 2009.

79.    Despite its contractual obligation to pay Plaintiff a 2% increase of his salary retroactive from May, 2009, Defendants failed to pay same in accordance therewith.

80.    Plaintiff has been damaged by Defendants' breach of contract.

16

WHEREFORE, Plaintiff, demands judgment against Defendants, as follows:

A.     Back pay and benefits;

B.     Front pay and benefits;

C.     Compensatory damages;

D.     Consequential damages;

E.     Punitive damages;

F.     Attorneys fees, interest, expenses and/or costs; and

G.     Such other relief as may be available and which the Court deems just and equitable.

SMITH, SMITH & CURLEY, P.C.

DATED: February 18, 2010     BY: _____

CHRISTOPHER J. EIBELER
**Attorney for Plaintiff**

## JURY DEMAND

Plaintiff herein demands trial by jury on all issues so triable.

SMITH, SMITH & CURLEY, P.C.

DATED: February 18, 2010     BY: _____

CHRISTOPHER J. EIBELER
**Attorney for Plaintiff**

17

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby stated to the best of my knowledge and belief that the matter in controversy is not the subject of any other action pending or contemplated in any other court or of a pending arbitration proceeding. Further, Plaintiff is unaware of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts.

SMITH, SMITH & CURLEY, P.C.

DATED: February 18, 2010         BY: _____

CHRISTOPHER J. EIBELER
Attorney for Plaintiff

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Robert W. Smith, Esq. is designated as trial counsel for the above captioned matter.

SMITH, SMITH & CURLEY, P.C.

DATED: February 18, 2010         BY: _____

CHRISTOPHER J. EIBELER
Attorney for Plaintiff

18

SMITH, SMITH & CURLEY, P.C.
149 Avenue At The Common
Shrewsbury, New Jersey 07702
(732) 935-7246
Attorneys for Plaintiff

------------------------------------------------------X

BRIAN CARSON

        Plaintiff,

v.

CAREONE, LLC, KING JAMES CARE
CENTER OF MIDDLETOWN, LLC a/k/a
CAREONE AT KING JAMES, KING
JAMES ACQUISITION COMPANY,
LLC, MICHAEL GENTILE AND ABC
COMPANIES (1-10)

        Defendants.

------------------------------------------------------X

: SUPERIOR COURT OF NEW JERSEY
: LAW DIVISION OF MONMOUTH COUNTY
:
: DOCKET NO. MON-L-958-10
:
:       Civil Action
:
: FIRST AMENDED COMPLAINT
:
:
:
:
:
:
:
:
:

    Plaintiff Brian Carson (hereafter "Plaintiff") residing at 3 Berry Street, Keansburg,

New Jersey 07734, by way of Complaint against CareOne, LLC, King James Care Center

of Middletown, LLC a/k/a CareOne at King James, King James Acquisition Company, LLC,

Michael Gentile and ABC Companies (1-10) (collectively herein referred to as

"Defendants") says:

## FACTS COMMON TO ALL COUNTS

    1.    Defendants CareOne, LLC, King James Care Center of Middletown, LLC

a/k/a CareOne at King James, King James Acquisition Company, LLC ("collectively

referred to herein as "CareOne") are a family-owned and operated health care continuum

providing post-acute rehabilitation, long term and assisted living care, respite care, and

memory care throughout New Jersey.

1

2.      Defendant King James Care Center of Middletown, LLC a/k/a CareOne At King James and King James Acquisition Company, LLC is one of CareOne's locations with a business address of 1040 Route 36, Atlantic Highlands, NJ 07716 ("King James").

3.      Defendant ABC Companies (1-10) are fictitious sole proprietorships, companies, limited liability companies, corporations, partnerships, and/or other companies/entities who are unknown to Plaintiff at this time but who may be identified during discovery in this matter, which persons and/or companies are related, affiliated and/or successors to CareOne and liable to Plaintiff as Plaintiff's employer for the reasons set forth herein.

4.      Defendant Michael Gentile was employed by CareOne as the Administrator at the King James location at all times relevant in this matter.  Upon information and belief, Defendant Gentile resides in New Jersey.

5.      Plaintiff began his employment with CareOne and King James at the King James location in or about December, 2006 in the position of maintenance assistant.

6.      In or about August, 2007, Plaintiff was promoted to the position of Maintenance Director.  In his new position, Plaintiff was the supervisor of approximately fifteen (15) employees.

7.      Plaintiff performed very well in the position of Maintenance Director.  In fact, Plaintiff was recognized by CareOne as the "Employee of the Month" on two separate occasions in 2007.

8.      In or about January, 2008, Plaintiff was given an additional title of Environmental Services Director.  Despite the new title, Plaintiff continued as the

2

Maintenance Director and remained the supervisor of approximately fifteen (15) employees.

9.     In or about August, 2008, Plaintiff sustained a broken leg. As a result of the injury, Plaintiff requested a leave of absence from work to obtain medical treatment and to recover from his injury.

10.     However, approximately two (2) weeks into his medical leave, Defendant Gentile telephoned Plaintiff and demanded that he immediately return to work. Plaintiff responded that he was unable to return to work because of his broken leg and the doctor had yet to clear him to return to work. Defendant Gentile responded that he did not care and if Plaintiff wanted his job, he must immediately return to work.

11.     As a result of Defendant Gentile's threat of termination, Plaintiff was forced to return to work prior to making a full recovery and receiving medical clearance from his doctor to return to work.

12.     After returning to work, Defendant Gentile denied Plaintiff's requests for intermittent leave so he could attend his doctor appointments and physical therapy sessions for his broken leg during work hours. Defendant Gentile advised Plaintiff that he needed to schedule his doctor appointments and physical therapy sessions outside his regular work hours. In response to Plaintiff advising Defendant Gentile that all his doctor appointments and physical therapy sessions could not be scheduled outside his regular work hours, Defendant Gentile stated, "That's your problem."

13.     As a result of Defendants' denial of Plaintiff's requests for medical leave necessary to make a full recovery from his broken leg, Plaintiff developed a blood clot in

3

his broken leg in or about October, 2008.

14.     As a result of developing a blood clot, Plaintiff applied for FMLA leave on or about October 17, 2008.

15.     After learning that Plaintiff applied for FMLA leave as a result of the blood clot, Defendant Gentile reprimanded Plaintiff by stating, "How dare you do this, after all I have done for you?" Defendant Gentile further told Plaintiff, that he had "lost all respect" for Plaintiff and "trust" in Plaintiff.

16.     In or about January, 2008, Plaintiff returned to work from his FMLA leave.

17.     Upon his return to work, Defendant Gentile advised Plaintiff that, as a result of him taking FMLA leave, Plaintiff was no longer the Maintenance Director and was stripped of all supervisory responsibilities. Plaintiff also learned that Defendants hired Mr. John Chiapetta and placed him in Plaintiff's position of Maintenance Director during Plaintiff's FMLA leave and that Plaintiff now had to directly report to Mr. Chiapetta.

18.     Plaintiff complained and objected to Defendants for demoting Plaintiff and retaliating against him for taking FMLA leave. In response to Plaintiff's complaints, Defendant Gentile advised Plaintiff that, "I can do whatever I want." Defendant Gentile also warned Plaintiff that he was "going to see to it that you fail."

19.     Plaintiff complained to the human resource manager at King James, Eric Russell, concerning Defendant Gentile's harassment and Defendants' decision to demote Plaintiff in retaliation for taking FMLA leave. In response to Plaintiff's complaints, Mr. Russell informed Plaintiff that, "I am not getting involved."

20.     As a result, Plaintiff then complained to a regional HR representative

4

concerning Defendant Gentile's harassment and Defendants' decision to demote Plaintiff in retaliation for taking FMLA leave.  The assigned HR representative responded that she would "look into it" and would "get back" to him.  Plaintiff, however, never received any further communication from this HR representative in response to his complaints.

21.   Additionally, true to his word, Defendant Gentile made every effort to see to it that Plaintiff fail.

22.   Additionally, Defendant Gentile constantly mocked Plaintiff as a result of his disability and routinely cursed at Plaintiff, by yelling "move f***ing faster" and "stop f***ing procrastinating."   Gentile began assigning Plaintiff tedious, unnecessary and unduly burdensome job assignments.   For instance, Defendant Gentile began requiring that Plaintiff fill out a Maintenance Room Check List that Defendant Gentile specifically created for Plaintiff to fill out for every room that he was required to check and make ready.

23.   In or about June, 2009, Plaintiff slipped on the wet floor at work and suffered an injury to his knee.  As a result of his injury, Plaintiff's doctor recommended that Plaintiff be placed on light duty, including no climbing, lifting, pushing or pulling of anything over 20 pounds.

24.   As a result of his injury and doctor's orders, Plaintiff requested that Defendants provide him light duty job assignments and that any duties Plaintiff was unable to perform as a result of his disability be reassigned to another employee.

25.   Plaintiff's request for the aforesaid reasonable accommodations was denied by Defendants.

26.   Around the time Plaintiff suffered his knee injury, Plaintiff's supervisor, John

Chiapetta, instructed Plaintiff to stop filling out the Maintenance Room Check List so that he had more time to complete other job duties that Mr. Chiapetta advised were "more important." Despite Mr. Chiapetta's instruction, Plaintiff received a written warning on August 4, 2009 from Defendant Gentile for failing to timely complete the Maintenance Room Check Lists.

27.   Despite his disabilities, medical leave and constant harassment and retaliation directed at him from Defendant Gentile for same, Plaintiff's job performance was always "good" to "outstanding."

28.   In fact, in the fall, 2009, Plaintiff was told that he would receive a raise. In an email to Plaintiff dated October 2, 2009, Defendant Gentile wrote:

> Brian, based upon my records, your annual review and 2% increase is over due. Further review of same supports the need to adjust your increase effective date to May 09 due to your leave of absence from work from 10/19/08 to 1/05/09. As such, your increase will be effective and retroactive to May 09. I will prepare your annual review with John and present it to you sometime next week. Please see me if you have any questions.

29.   Thereafter, Plaintiff was provided a performance appraisal which rated Plaintiff's work performance as "good" or "outstanding" in all categories.

30.   Despite Plaintiff's "good" to "outstanding" work performance, Defendant Gentile continued to harass and retaliate against Plaintiff as a result of his disability, medical leaves, requests for reasonable accommodations and complaints of Defendant Gentile relating to same.

31.   Plaintiff continued to complain to Defendant about Gentile's conduct. Despite Plaintiff's complaints, no one from CareOne did anything to assist Plaintiff,

6

investigate Plaintiff's complaints or stop Defendant Gentile's harassment and retaliation of Plaintiff.

32.    On November 9, 2009, Plaintiff was reprimanded by his supervisor John Chiapetta for refusing to lie to the Director of Nursing by telling them that Mr. Chiapetta was present at work, when in fact, he had not yet arrived at work.  As a result of the incident, Plaintiff was suspended for one day by Defendants.

33.    Later that day, Plaintiff telephoned CareOne's HR Department and complained to Ms. Karen Ashmore about Defendant Gentile's continued harassment and retaliation and to further inquire as to the reasons why he was being suspended.  During the telephone call, Plaintiff also requested that Ms. Ashmore investigate and stop the ongoing harassment and retaliation directed at him by Defendant Gentile.  Ms. Ashmore responded that she would look into it and call him back.

34.    Approximately one hour after complaining to Ms. Ashmore, Defendant Gentile telephoned Plaintiff and advised him that he was now being suspended for an additional day for complaining to HR.  Defendant Gentile further advised Plaintiff that he was also being required to attend a meeting with Defendant Gentile at 3:00 p.m. the following day.

35.    After speaking with Defendant Gentile and being suspended an additional day in retaliation for his complaints, Plaintiff telephoned Ms. Ashmore to complain about the additional suspension of one day and to repeat his complaints concerning Defendant Gentile's harassment and retaliation.  In response, Ms. Ashmore advised Plaintiff that there was nothing she could do to assist him.  As a result, Plaintiff requested that Ms. Ashmore provide him a name of someone who could assist him.  Ms. Ashmore responded that

Plaintiff could try bringing his complaints to Mr. Kenneth Keegen.

36.     Prior to his meeting with Defendant Gentile, Plaintiff wrote a letter to Mr. Keegen repeating his complaints concerning Defendant Gentile's continued harassment and retaliation of Plaintiff as a result of his disability, medical leave and requests for accommodations. In this letter, Plaintiff wrote:

> The reason I am writing to you is to inform you of the ongoing harassment and retaliation directed toward me and to request your assistance to make it stop. I have made previous complaints to my supervisors, local human resource representative and regional human resource representative. Despite my complaints, nothing has been done and the harassment and retaliation continues to escalate.
>
> I have been harassed and retaliated against since I was forced to take a medical leave as a result of a broken leg sustained in August, 2008....

37.     Plaintiff's letter further reads:

> The ongoing harassment/retaliation has caused me to sustain severe chest pains, stress and anxiety. I have been prescribed xanax and ambien by my doctor. The stress and anxiety I am under at work has caused tremendous hardship at home with my wife and with my children. My performance evaluations show that I am an outstanding employee of Care One. I only request the assistance that I am entitled to under the law and for the harassment/retaliation to stop. I recommend that Mr. Gentile undergo sensitivity training and for him to be informed and understand his obligations under the law.

38.     At the meeting, Plaintiff was told by Defendant Gentile that he was aware that Plaintiff wrote a letter to CareOne's corporate office, and as a result, he was now suspended indefinitely.

39.     The next day, Plaintiff received a phone call from Defendant Gentile advising him that he was terminated.

40.    No one from CareOne contacted Plaintiff to discuss his complaints and/or allegations in his letter. Instead, Defendant terminated Plaintiff.

41.    In a letter dated November 12, 2009, Defendant Gentile wrote to Plaintiff concerning Defendants' reason for his termination as follows:

> We have now completed a full review of your overall job performance. This letter is to inform you that based on our review, your employment with CareOne at King James has been terminated due to continued unsatisfactory job performance.

42.    As a result of Defendants' conduct, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

## FIRST COUNT

### NEW JERSEY LAW AGAINST DISCRIMINATION - DISABILITY DISCRIMINATION

### N.J.S.A. 10:5-1 et seq. ("NJLAD")

43.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

44.    During his employment, Plaintiff suffered from a broken leg, a blood cot (which formed in the broken leg), and a sprained knee. The aforesaid conditions constitute disabilities and/or handicaps under the NJLAD.

45.    Defendants took adverse employment actions against Plaintiff, including, harassing Plaintiff, demoting Plaintiff, denying Plaintiff's requests for reasonable accommodations, and terminating Plaintiff's employment, as a result of Plaintiff's disabilities.

9

46.     The aforesaid adverse employment actions taken by Defendants because of Plaintiff's disabilities are a violation of the NJLAD.

47.     Defendant Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJLAD violations.

48.     As a result of Defendants' conduct, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

**WHEREFORE**, Plaintiff, demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.     Back pay and benefits;

b.     Front pay and benefits;

c.     Compensatory damages;

d.     Consequential damages;

e.     Punitive damages;

f.     Pre-judgment interest and enhancements to off-set negative tax consequences;

g.     Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); and

h.     Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

10

## SECOND COUNT

## NJLAD - RETALIATION

49.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

50.    As set forth above, Defendants' conduct and/or treatment of Plaintiff, including the termination of his employment, were in retaliation for the protests and complaints Plaintiff made concerning disability discrimination, retaliation, failure to reasonably accommodate his disabilities, the hostile work environment and other illegal and discriminatory conduct directed toward him by Defendants.

51.    Defendant Michael Gentile condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the retaliatory conduct and actions taken against Plaintiff.

52.    Said actions violate the NJLAD.

53.    By reason of the actions complained of above, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.       Back pay and benefits;

b.       Front pay and benefits;

c.       Compensatory damages;

d.       Consequential damages;

e.       Punitive damages;

11

f.    Pre-judgment interest and enhancements to off-set negative tax consequences;

g.    Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); and

h.    Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

## THIRD COUNT

## NJLAD - FAILURE TO REASONABLY ACCOMMODATE

54.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

55.    At times during his employment, Plaintiff required and requested light duty and several medical leaves of absence from work as a result of his disabilities/handicaps.

56.    Defendants were legally required to reasonably accommodate Plaintiff's handicaps/disabilities, but failed to do so.

57.    Defendants were also legally required to engage with Plaintiff in an interactive process to determine what reasonable accommodations could be provided to Plaintiff.

58.    Plaintiff performed his job duties in a "good" or "outstanding" manner.

59.    With a reasonable accommodation, such as permitting Plaintiff to take the requested leaves of absence or providing Plaintiff light duty tasks/responsibilities, Plaintiff would have been able to return and/or continue to work and perform the essential functions of his job.

12

60.     Defendants' failure to reasonably accommodate Plaintiff caused Plaintiff to suffer physical injuries and adverse job consequences in the form of a demotion which resulted in the loss of his job status and supervisory responsibilities and, eventually, the termination of his employment with Defendants.

61.     The Defendants' failure to reasonably accommodate Plaintiff constitutes a violation of the NJLAD.

62.     Defendant Michael Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJLAD violations.

63.     By reason of the actions complained of above, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.     Back pay and benefits;

b.     Front pay and benefits;

c.     Compensatory damages;

d.     Consequential damages;

e.     Punitive damages;

f.     Pre-judgment interest and enhancements to off-set negative tax consequences;

g.     Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); and

13

h.    Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

## FOURTH COUNT

### NJLAD – HOSTILE WORK ENVIRONMENT

64.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

65.    Defendants' acts as set forth herein constitute a severe and pervasive hostile work environment based upon disability in violation of the NJLAD.

66.    Defendant Michael Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJLAD violations.

67.    As a result of the hostile work environment, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid NJLAD violations as follows:

a.    Back pay and benefits;

b.    Front pay and benefits;

c.    Compensatory damages;

d.    Consequential damages;

e.    Punitive damages;

f.    Pre-judgment interest and enhancements to off-set negative tax consequences;

g.    Any and all attorneys fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys fees incurred by plaintiff in the prosecution of this suit (including enhancements thereof required to off-set

14

negative tax consequences and/or enhancements otherwise permitted under law); and

h.      Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable.

## FIFTH COUNT

### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2601, et seq.

68.     Plaintiff repeats and realleges each of the prior allegations of the within complaint as if set forth at length herein.

69.     As a result of Plaintiff's serious medical conditions, including his broken leg and blood clot formed in his broken leg, Defendants were required to advise Plaintiff of his medical leave rights and to permit Plaintiff to take medical leave in accordance with the Family and Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA").

70.     At all relevant times, CareOne was an employer within the meaning of the FMLA

71.     At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA.

72.     Plaintiff did not understand his rights under the FMLA.

73.     By their actions, Defendants unlawfully interfered with, restrained, retaliated against and denied the exercise of and/or Plaintiff's ability to exercise rights provided by the FMLA.  Plaintiff has been prejudiced by Defendants' FMLA violations.

74.     Defendant Michael Gentile participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the FMLA violations.

15

75.     The aforesaid conduct by Defendants was, and is, a willful violation of the FMLA.

76.     As a direct and proximate result of Defendants' willful violation of the FMLA, Plaintiff has suffered physical injury, emotional distress, economic loss and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for harm suffered due to the aforesaid FMLA violations as follows:

A.     Compensatory damages equal to all wages, salary, employment benefits, and other compensation denied or lost by Plaintiff, pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(I);

B.     Pre-judgment interest pursuant to 29 U.S.C. §2617(a)(1)(A)(ii);

C.     Liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

D.     Attorneys fees, expert witness fees and costs pursuant to 29 U.S.C. §2617(a)(3);

E.     Post-judgment interest and enhancements to off-set negative tax consequences; and

F.     Such further relief as the Court deems equitable and just.

## SIXTH COUNT

## BREACH OF CONTRACT

77.     Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

78.     On or about October 2, 2009, Plaintiff was promised by Defendants that he would receive a 2% increase in his salary, retroactive from May, 2009.

16

79.     Despite its contractual obligation to pay Plaintiff a 2% increase of his salary retroactive from May, 2009, Defendants failed to pay same in accordance therewith.

80.     Plaintiff has been damaged by Defendants' breach of contract.

WHEREFORE, Plaintiff, demands judgment against Defendants, as follows:

A.     Back pay and benefits;

B.     Front pay and benefits;

C.     Compensatory damages;

D.     Consequential damages;

E.     Punitive damages;

F.     Attorneys fees, interest, expenses and/or costs; and

G.     Such other relief as may be available and which the Court deems just and equitable.

SMITH, SMITH & CURLEY, P.C.

DATED: March 5, 2010          BY: _____
                                   CHRISTOPHER J. EIBELER
                                   **Attorney for Plaintiff**

17